Michael Knight
mknight708@gmail.com
2751 Hennepin Ave
Suite 159
Minneapolis, MN 55408
Telephone: 612-703-7994



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

MICHAEL KNIGHT,
A Minnesota Resident,

Plaintiff,

v.
CIRCLE K STORES, INC,
An Arizona Corporation,

Defendant

Case No.    CV-18-2212-PHX-DJH

**COMPLAINT FOR:**

**[1] DECLARATORY RELIEF
LANHAM ACT, 15 U.S.C.
§1114(2)(D)(iv) and §1125 (a)
[2] REVERSE DOMAIN NAME
HIJACKING
ANTICYBERSQUATTING
CONSUMER PROTECTION ACT,
15 U.S.C. § 1114](2)(D)(v) and §1125(d)**

_____/

Plaintiff, Michael Knight ("Knight" or "Plaintiff"), files this, his Complaint against Circle K Stores, Inc. ("Circle K" or "Defendant"), alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action for Declaratory Judgment under the Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a); and reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1114(2)(D)(v).

2. This Court has personal jurisdiction over Defendant as they have consented to jurisdiction by this court in Paragraph [10] of their complaint with the National Arbitration Forum (NAF) in accordance with Paragraph 3(b)(xii) of the Uniform Domain Dispute Resolution Policy (UDRP) of the International Committee of Assigned Names and Numbers (ICANN).

3. Venue in this Court exists as the office of the Registrar of the domain name, GoDaddy.com, LLC. is located in Scottsdale, Maricopa County, Arizona, and, pursuant to 28 U.S.C. § 1391(b)(1) and (c), as Defendant is deemed a resident of this District for venue purposes, as well as under subsection (b)(2) because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District.

## PARTIES

4. Plaintiff, Michael Knight, is a Minnesota Resident with his office at 2751 Hennepin Avenue, Suite 159, Minneapolis, Minnesota 55408.

5. On information and belief, Defendant, Circle K Stores, Inc. is a Arizona Corporation having its principal place of business at 1130 W. Warner Road, Tempe, AZ 85284.

## NATURE OF THE CONTROVERY

6. This is an action for Declaratory Judgment and certain other statutory remedies under the Trademark laws of the United States and the Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. §1125(d).  The Plaintiff is the registrant of the internet domain name KangarooExpress.com.  The domain name has been "locked" by the registrar, GoDaddy.com, and is at immediate risk of being transferred away from Plaintiff by, and as a result of, the actions of Defendant, which claim trademark rights and certain other rights with respect to the term and the domain name KangarooExpress.com.  The Plaintiff seeks a determination by this court that the Plaintiff's registration and/or use of KangarooExpress.com is not, and has not been in violation of the ACPA and that Plaintiff's use of KangarooExpress.com constitutes neither an infringement, a threat of dilution of Defendant's trademark nor a violation of the ACPA.

## FACTS COMMON TO ALL CLAIMS OF RELIEF

7. This case involves "reverse domain name hijacking," which occurs when an individual or an entity may allege that it is the owner of a trademark and assert spurious claims of trademark infringement and trademark dilution against the owner of a domain name whose chosen domain name is similar or identical to the registered trademark.  Defendant are attempting to wrest control of Plaintiff's domain name by asserting baseless allegations of trademark infringement, trademark dilution and cybersquatting.

8. Plaintiff is in the business of acquiring and using for business purposes, various generic domain names as and when they become available, for leasing, sale or email services.

9. The disputed Domain Name KangarooExpress.com was originally purchased by the Plaintiff for a cost of $2,948.93 in 2017.  Pursuant to his business plan, Plaintiff purchased and registered the domain name on or about May 8, 2017, [**EXHIBIT A**] in good faith at which time (and at all times subsequent thereto) he believed and has had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful, and has "parked" it with a reputable monetizer, Quotes.com, since acquisition.  The Plaintiff does not exercise any control over the parking services provided by Quotes.com.

10.  Plaintiff is in the business of registering domain names and using them for email addresses or sale or lease; is the registrant of many generic domain names and has accumulated over 100 generic names that are used in this manner.

11.  Defendant CIRCLE K has trademarks for "Kangaroo Express" while Plaintiff's domain name is "KangarooExpress.com" which is made up of 2 common dictionary words.  A USPTO Trademark search using TESS(Trademark Electonic Search System) for the terms "Kangaroo Express" provides 4 live results.  One of those 4 results include a company called Kangaroo Pickup & Delivery Service, Inc., dba Kangaroo Express, a freight delivery service since 1992, using the domain name "Kangaroo-Express.com." [**EXHIBIT B**].

12. Defendant CIRCLE K has a registered trademark "Kangaroo Express" registered on May 22, 2007, for retail convenience store services, including gasoline; and a registered trademark "K Kangaroo Express" registered on May 22, 2007, for retail convenience store services, including gasoline.  A review of the Defendant's website located at CircleK.com with a store locator search for "Kangaroo Express *state," yields more than 500 locations in the southeastern part of the U.S. that are purported to be Kangaroo Express convenience stores and gas stations.  Upon further research by a phone call to each of the numerous locations on July 12th, 2018 it was discovered that all locations have been converted to "CIRCLE K" convenience stores and gas stations.  Not one location answered the phone with "Kangaroo Express"

[**EXHIBIT C**].  This same evidence of Kangaroo Express stores being converted to

CIRCLE K's is found in an article dated Feb. 14, 2016 at the website Gainesville.com

titled "KANGAROOS switching to CIRCLE K's" where David Morgan, vice

president of operations for Circle K, said, "a rebranding of **all** Kangaroo Express

locations as Circle K stores in Marion and Alachua counties and throughout the

Southeast is to begin within the month, with completion expected by the end of the

summer" [**EXHIBIT D**].  Circle K has extensively ignored and not advertised the

KANGAROO EXPRESS Marks in association with a wide range of products and

services dating back to at least as early as 2015, when the purchase of and conversion

from Kangaroo Express to Circle K began.  Circle K provides very little information

regarding its Kangaroo Express convenience stores via its website as all stores have

been converted to CIRCLE K stores.  CIRCLE K erroneous maintains individual

websites for each of the local Kangaroo Express stores, but those stores have been

converted to CIRCLE K stores.  CIRCLE K has not invested any substantial time,

money, or effort in creating, marketing, and maintaining a social media presence since

2015 for the Kangaroo Express brand.  From the time CIRCLE K purchased Kangaroo

Express they have not updated their page on Twitter (**EX E**; see also

https://www.twitter.com/krooexpress) or Facebook (**EX E**; see also

https://www.facebook.com/KangarooExpress ).  As a result of the lack of extensive

promotion of the KANGAROO EXPRESS brand and trade name, Circle K has lost all

substantial goodwill and customer loyalty under these trademarks.   The

KANGAROO EXPRESS trademark was a distinctive, regionally recognized

trademark at one time in the past but without an active Twitter or Facebook page it is

all but forgotten by the public [**EXHIBIT E**].   A review of the Plaintiff's parked

website at KangarooExpress.com is unnecessary and irrelevant as there is not any

recent or continued use of the "Kangaroo Express" trademarks by Defendant.

13.   On June 5, 2018, Defendant filed a Complaint thereby initiating an arbitration

proceeding against Plaintiff with the National Arbitration Forum ("NAF") in

accordance with the Uniform Domain Name Dispute Resolution Policy ("UDRP")

adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN")

against the Plaintiff for the domain name KangarooExpress.com.   On or about June

6th, 2018, the registrar of the domain name, Godaddy.com "locked" the domain name,

thereby prohibiting Plaintiff from utilizing the domain name in accordance with the

uses typically enjoyed by a registrant of a domain name.   The action to "lock" the

domain name was in accordance with the UDRP and associated procedures.

14.   On June 29, 2018, the NAF panel assigned to the case rendered a decision requiring

the transfer of the domain name to Defendant. (NAF case No. FA1806001790280)

[**EXHIBIT F**].   As of the date of the filing of this complaint, the domain name

continues to be "locked" pending the transfer of the registration to the Defendant on

July 16, 2018, pursuant to the UDRP decision.

15.  Plaintiff's use of the term as a domain name has not traded upon any goodwill or reputation enjoyed by Defendant as it relates to the products that Defendant offers, nor is there any possibility of confusion between the products offered by Defendant to the general public. Further, Defendant did not cite one instance of consumers being confused by Plaintiff's web site and Defendant's web site.

16.  Plaintiff's use of KangarooExpress.com as his chosen domain name is a fair or otherwise lawful use of the term.

17.  At no time, did Plaintiff trade upon or use Defendant's trademarks for "Kangaroo Express".

18.  At no time did the Plaintiff register or use the domain name KangarooExpress.com in "Bad Faith" as defined by 15 U.S.C. §1125.

19.  Due to the impending transfer of the domain name to the Defendant pursuant to the Decision by the NAF Panel, Plaintiff is now forced to bring this action to protect his rights in his intellectual property.  Plaintiff may have to retain counsel and incur substantial fees and costs to bring this suit.

20. Because NAF has directed that the KangarooExpress.com domain name be transferred to Defendant, this Court has jurisdiction under 15 U.S.C. §1114(2)(D)(v) to determine whether Plaintiff's registration and use of KangarooExpress.com is unlawful under the ACPA and the Lanham Act.

21.  Based on the facts set forth herein, an actual controversy has arisen and now exists between Plaintiff and Defendant regarding whether or not Plaintiff's use of the term KangarooExpress.com as his domain name infringes Defendant's trademarks and/or constitutes trademark dilution and/or can serve as the basis for any relief under any Federal or state law.

22.  Plaintiff has never sold, transferred, or trafficked in the domain name.  Nor has Plaintiff at any time specifically offered to sell the domain name to Defendant, though the domain name, along with other domain names registered by Plaintiff are available for sale.

23.  At all times, Plaintiff utilized the domain name in a bona fide manner for bona fide purposes.

24.  Plaintiff did not have any intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

25.  Plaintiff did not provide material and misleading false contact information when applying for the registration of the domain name. Plaintiff did not fail to maintain accurate contact information with respect to the domain name in question or with respect to any other domain name.

26.  Plaintiff's use of KangarooExpress.com as his chosen domain name is a fair or otherwise lawful use of the term.

27.  Because of the actions of Defendant, and its claims of trademark infringement and dilution, Plaintiff faces losing valuable rights in his Internet domain name.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment - Lanham Act, 15 U.S.C. §§1114(2)(D)(v) and 1125(a)

28.  KNIGHT incorporates by reference the factual allegations set forth in Paragraphs 7 through 27 above.

29.  The ACPA, provides a cause of action for a registrant whose domain name has been suspended, disabled, or transferred by which the registrant may sue for a declaration that the registrant is not in violation of the Act and for an injunctive relief to the domain name registrant, including the reactivation of the domain name. 15 U.S.C.§ 1114(2)(D)(v).

30.  Section 1114(2)(D)(v) provides a registrant who is threatened with the loss of his domain name under the UDRP with a cause of action for an injunction returning the domain name if the registrant can show that the registrant is in compliance with the ACPA.

31.  Defendant does not have any exclusive use of the mark nor did it have such a right at the time Plaintiff registered the domain name.

32.  Plaintiff did not register the domain name KangarooExpress.com with the bad faith intent to profit from the goodwill of defendant's trademark.

33.  Plaintiff is entitled to have the unencumbered use of the domain name KangarooExpress.com and to have the domain name reactivated and to have any and all suspensions or transfers terminated and prohibited.

34.  In the UDRP action, Defendant intentionally misrepresented and incorrectly stated in its Complaint that Plaintiff had been using the domain name KangarooExpress.com to sell the domain name to the Defendant, when the truth was that from acquisition to date, there were no authorized offers to sell the domain name to Defendant.  These allegations misrepresented by Defendant to the UDRP Panel were the express cause of the NAF panel to require Plaintiff to transfer the Domain Name to Defendant **[EXHIBIT G]**.

35. The Defendant fraudulently claimed to the UDRP Panel that the disputed Domain Name was used intentionally to attract, for commercial gain, Internet users to the Plaintiff's website or other on-line location, creating the possibility of confusion with the mark of the Defendant as to the source or commercial origin of those products, though knowing that there were no products of Defendant or Defendant's competitors being promoted by Plaintiff.

36.  As a direct and proximate result of Defendant's wrongful conduct, KNIGHT has been and will continue to be damaged.

37.  Unless this Court issues a Declaratory Judgment that Plaintiff is entitled to maintain registration of its Domain Name, KangarooExpress.com, the transfer of the Domain Name to Defendant will damage Plaintiff irreparably.  KNIGHT has no adequate remedy at law.

38.  Defendant's acts make this an exceptional case under 15 U.S.C. §1117(a), and KNIGHT is thus entitled to an award of attorney's fees and costs.

39.  Alternately, KNIGHT is entitled to elect statutory damages instead of actual damages and profits, pursuant to 15 U.S.C. §1117 (d).

## SECOND CLAIM FOR RELIEF

### Anticybersquatting Consumer Protection Act – 15 U.S.C. §1125(d) and §1114(2)(D)

40.  KNIGHT incorporates by reference the factual allegations set forth in Paragraphs 7 through 27 above.

41.  Section 1114(2)(D)(iv) provides that when a registrar takes an action to transfer a domain name "based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any

damages, including costs and attorneys' fees, incurred by the domain name registrant as a result of such action."

42. Section 1114(2)(D)(v) provides a registrant may "file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this Act." Under this section, a "court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name back to the domain name registrant."

43. Knight's registration and use of the domain Name KangarooExpress.com was not unlawful under Title 15, United States Code, § 1114(2)(D)(v) or §1125(d).

## PRAYER FOR RELIEF

A.     Order GoDaddy.com to take all action necessary to enable the domain name KangarooExpress.com; to reactivate the domain name; to discontinue any suspension of the domain name; and to refrain from transferring the domain name from Plaintiff to Defendant;

B.     For a declaration from this Court that Plaintiff's registration, use and possession of the domain name KangarooExpress.com neither infringes defendant's trademarks, nor dilutes the trademarks in any manner nor constitutes a violation of any Federal or State law;

C.     For a declaration from this Court that Plaintiff may continue to use and enjoy his chosen domain name without interference of any type by the Defendant;

D.    For injunctive relief prohibiting defendant from interfering with or challenging

Plaintiff's registration, possession or use of the subject domain name;

E.    For attorney's fees and costs incurred by the Plaintiff in bringing this action;

and

F.    For such other relief as this Court may deem just and proper.

This 13th day of July, 2018.

Michael Knight
mknight708@gmail.com
2751 Hennepin Ave
Suite 159
Minneapolis, MN 55408
Telephone: 612-703-7994

# Exhibit A



NameJet
15808 Gran Bay Parkway West Jacksonville, FL 32257
Technical Support: 425-974-465

# NameJet Invoice 556392257

VAT or EIC Number: _____
Product: Domain Names
Invoice Date: 5/8/2017 1:20:29 PM
Invoice Number: 556392257

| Description | Amount (USD) |
| --- | --- |
| kangarooexpress.com - Order complete | $2,877.00 |
| Online Admin Fee | $71.93 |
| Total | $2,948.93 |

Exhibit B

# United States of America
## United States Patent and Trademark Office

# KANGAROO EXPRESS

**Reg. No. 4,897,992**

**Registered Feb. 9, 2016**

**Int. Cl.: 39**

**SERVICE MARK**

**PRINCIPAL REGISTER**

KANGAROO EXPRESS OF SOUTHERN COLORADO, LLC (COLORADO CORPORATION)
106 ONEIDA ST
PUEBLO, CO 81006

FOR: TRANSPORTATION AND DELIVERY SERVICES, NAMELY, SAME DAY SHIPMENT SERVICES, IN CLASS 39 (U.S. CLS. 100 AND 105).

FIRST USE 11-15-1992; IN COMMERCE 11-15-1992.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "EXPRESS", APART FROM THE MARK AS SHOWN.

SER. NO. 86-649,998, FILED 6-3-2015.

ALICE BENMAMAN, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and an**
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office
(USPTO). The time periods for filing are based on the U.S. registration date (not the international registration
date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to
those for nationally issued registrations.  *See* 15 U.S.C. §§1058, 1141k.  However, owners of international
registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the
underlying international registration at the International Bureau of the World Intellectual Property Organization,
under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated
from the date of the international registration.  *See* 15 U.S.C. §1141j.  For more information and renewal
forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:** **Fees and requirements for maintaining registrations are subject to change.  Please check the
USPTO website for further information.  With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

**NOTE:**  **A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark
owners/holders who authorize e-mail communication and maintain a current e-mail address with the
USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark
Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms
available at** http://www.uspto.gov.

Exhibit C



⊙ SELECT YOUR REGION ⌄

**f**
HOME (/?LANGUAGE=EN)
(HTTPS://WWW.FACEBOOK.COM/CIRCLEKSTORES?FREF=TS)(HTTPS://TWITTER.COM/CIRCLEKSTORES)

🐦

STORE LOCATOR (/STORE-LOCATOR?LANGUAGE=EN)

▶️

# FIND YOUR CONVENIENCE STORE

kangaroo express                    ⊙

**+**  ADD PARAMETERS



(https://maps.google.com/maps?ll=28.787469,-81.212056&z=15&hl=en-US&gl=US&mapclient=apiv3) Map data ©2018 Google

← **SEARCH RESULTS (HTTPS://WWW.CIRCLEK.COM/STORE-LOCATOR? LOCATION=KANGAROO%20EXPRESS%20FL&LANGUAGE=EN)**

# Kangaroo Express, 4140 E 46 Sr

# Sanford, FL, US, 32771

**Open now**   📞 **(407) 322-1479 (tel:4073221479)**

⬦ **Get Directions**

SELECT YOUR REGION ⌄

Kangaroo Express at 4140 E 46 St, Sanford, FL, US is a convenience store and gas station offering a wide variety of products for people on the go. If you are looking for a great cup of coffee, a cold beverage, a Polar Pop cup or a Froster drink, or fresh food to go, we are the place to visit. We have premium quality fuels. If you need an ATM, please stop by. Our fast and friendly team is always happy to serve you!

(HTTPS://WWW.FACEBOOK.COM/CIRCLEKSTORES?FREF=TS) (HTTPS://TWITTER.COM/CIRCLEKSTORES)

## HOURS

| Friday | Open 24h |
|---|---|
| Saturday | Open 24h |
| Sunday | Open 24h |
| Monday | Open 24h |
| Tuesday | Open 24h |
| Wednesday | Open 24h |
| Thursday | Open 24h |

## SERVICES

| ATM | ATM | Coffee |
|---|---|---|
| Polar Pop | | Froster |
| Gas | | Diesel |
| Hot dog | | |

## JOBS AT KANGAROO EXPRESS

Apply for a job (https://www.circlek.com/jobs-at-circle-k?language=en)

COPYRIGHT © 2018 CIRCLE K STORES AND ALIMENTATION COUCHE-TARD. ALL RIGHTS RESERVED. POWERED BY BRANDMASTER (HTTP://WWW.BRANDMASTER.COM) / MADEO (HTTP://WWW.MADEO.CZ) | PRIVACY POLICY (/PRIVACY-POLICY-?LANGUAGE=EN) | TERMS OF USE (/TERMS-OF-USE-?LANGUAGE=EN)
CERTAIN ACTIVITIES PROVIDED VIA THE WEBSITE MAY BE COVERED BY U.S. PATENT 5,930,474.

Exhibit D



# Kangaroos switching to Circle K

**By Richard Anguiano / Business editor**

Posted Feb 14, 2016 at 5:00 PM

As Circle K prepares to build a 5,000-square-foot convenience store off Maricamp Road in Ocala late this year, the gas/convenience store chain is preparing to send the Kangaroo Express brand hopping off into the sunset within weeks.

OCALA - As Circle K prepares to build a 5,000-square-foot convenience store off Maricamp Road in Ocala late this year, the gas/convenience store chain is preparing to send the Kangaroo Express brand hopping off into the sunset within weeks.

David Morgan, vice president of operations for Circle K, said Friday that groundbreaking for the new Marion County store at 4650 SE 38th St. (at that street's intersection with Southeast Maricamp Road) should happen "toward the end of this calendar year."

In the meantime, Morgan said, a rebranding of all Kangaroo Express locations as Circle K stores in Marion and Alachua counties and throughout the Southeast is to begin within the month, with completion expected by the end of the summer.

"Ocala, Gainesville and Jacksonville, are all real big Kangaroo markets," Morgan said. "We're super excited to bring the Circle K brand to those customers."

Alimentation Couche-Tard, the Laval, Québec-based parent company of Circle K, bought The Pantry --- the Cary, North Carolina-based parent company of Kangaroo Express --- for $860 million in cash in a deal that closed in March. Now defunct, The Pantry had operated since 1967. Couche-Tard operates some 16,000 stores in Canada, the U.S., Mexico, Europe and Asia.

Changes will go beyond hauling down the Kangaroo mascot and replacing it

with the Circle K insignia, according to Morgan. He said some stores will get new fuel brands.

"Some will get Shell," he said. "Some of them will be Mobil. Some will be branded Circle K. But you will see Kangaroo, that brand, disappear over time completely."

Inside, all stores will offer 79-cent Polar Pop drinks.

According to Morgan, the new Maricamp Road store will have a "state-of-the-art" 24-flavor drink fountain, including eight heads for the "Froster" frozen-drink beverage. The store also will offer a milkshake machine, two flavors of frozen yogurt, and a "Simply Great Coffee" bar, where patrons can serve themselves cappuccino and espresso-based drinks, among other items.

Morgan said the Southeast 38th Street/Maricamp Road store is "positioned for long-term success."

"We feel like that's potentially a growth area," he said. "It's in a section of town that's kind of in transition. You get people kinda going to and from town."

The new Circle K in Ocala will have an established competitor: A Qwik King at 4596 SE Maricamp Road has served that intersection since 2008.

"We believe that competition is good," Morgan said. "It makes us all better and we believe customers will appreciate what we offer. We're confident that our store should do well."

Circle K stores typically employ 15 to 20 workers, he said, adding that anyone interested in working at the new store can fill out an application at any Kangaroo in Marion County.

"In this particular site, we will hire for this site from the neighboring Kangaroo sites and train them in those locations, so that when this store is built, we can transfer them into the store," Morgan said. "So all of the employees will come from the area. We're not bringing people from outside the area to manage the store."

*Contact Richard Anguiano at richard.anguiano@starbanner.com.*

# Exhibit E

Kangaroo Express (@KrooExpress) | Twitter

🐦 Home    ⚡ Moments      Search Twitter   🔍      Have an account? **Log in ▾**



**Tweets** 6,354    **Following** 1,231    **Followers** 7,860    **Likes** 114      ( Follow )

## Kangaroo Express
@KrooExpress

The leading independently operated convenience store chain in the southeastern United States, delivering a FAST, FRIENDLY, CLEAN shopping experience.

📍 Southeast USA

🔗 kangarooexpress.com

📅 Joined June 2009

🖼 658 Photos and videos

  
  

**Tweets**    Tweets & replies    Media

 **Kangaroo Express** @KrooExpress · 23 Sep 2015
Join us as our Circle K brand goes global. We are as excited as ever to see you in our stores.


**Global Circle K | Couche-Tard**
Couche-Tard, one of the world's leading convenience retailers, has announced the creation of a new, global convenience brand, "Circle K". The new Circle K brand...
corpo.couche-tard.com

💬 3    🔁    🤍 9

 **Kangaroo Express** @KrooExpress · 22 Sep 2015
We have great news to share! We are evolving into a global brand, and we will be changing our name to Circle K.


**Global Circle K | Couche-Tard**
Couche-Tard, one of the world's leading convenience retailers, has announced the creation of a new, global convenience brand, "Circle K". The new Circle K brand...
corpo.couche-tard.com

💬 1    🔁 6    🤍 5

 **Kangaroo Express** @KrooExpress · 30 Aug 2015
Maybe it's time to stop by The Roo and grab a @CocaCola   #ShareACoke 💃





♡ 4

 **Kangaroo Express** @KrooExpress · 30 Aug 2015
Take notes from this guy and do #coffee right! Step it up a notch with The Roo's
#BeanStreet Coffee Costa Rican Blend!

♡

 **Kangaroo Express** @KrooExpress · 29 Aug 2015
This fella speaks the truth! When it comes to @OREOs, you just. can't. stop.
#CantStop #WontStop



💬 1    ↻ 1    ♡ 2

 **Kangaroo Express** @KrooExpress · 28 Aug 2015
When you're headed to The Roo and you know you're gonna get some
@TastyKake pies... ow.ly/PToXU

💬 1    ↻    ♡ 2

 **Kangaroo Express** @KrooExpress · 25 Aug 2015
You're not you when you're hungry    so satisfy your taste buds with a @Snickers
from the ROO Bin! bit.ly/1A2oJYN

💬    ↻    ♡ 1

 **Kangaroo Express** @KrooExpress · 25 Aug 2015
If there's one thing I know, it's that @Hersheys can cure those mid-afternoon
blues.



💬    ↻    ♡ 2

 **Kangaroo Express** @KrooExpress · 24 Aug 2015
Take a break from the scorcher outside and cool off at The Roo! Hop on in for a big 'ol Polar Pop cup!



💬 1    🔁    🤍 4

 **Kangaroo Express** @KrooExpress · 23 Aug 2015
Oh would ya look at the time   It's #ROOCup refill time! #ROOfills

💬    🔁 1    🤍 1

 **Kangaroo Express** @KrooExpress · 23 Aug 2015
Hop up out of bed and turn your swag on at The Roo with a #ROOMug refill!

💬    🔁    🤍

 **Kangaroo Express** @KrooExpress · 22 Aug 2015
When it comes to snacks, it's always the bigger the better. I see you @Hostess_Snacks with your #JUMBO honey buns!

💬 1    🔁 1    🤍 1

 **Kangaroo Express** @KrooExpress · 21 Aug 2015
#FF to these great Salute Our Troops orgs @FisherHouseFdtn @USVeteransCorps @USOofNC #KESalute



💬 1    🔁 7    🤍 5

**Kangaroo Express** @KrooExpress · 20 Aug 2015
Somethin' tells me this guy would love the new @MoutainDew Electric Charge! #Swag





♡    ⟲ 1    ♡ 3



**Kangaroo Express** @KrooExpress · 20 Aug 2015                    ⌄
S/O to @JimmyTatro for knowing a good pista-chio when he sees it! @getcrackin

**Jimmy Tatro's post on Vine**
Pista-chios
View on Vine

♡        ⟲        ♡

**Kangaroo Express** @KrooExpress · 19 Aug 2015                    ⌄
Got a #FullHouse of hungry kiddos?! Hop on down to The Roo and fill 'em up

with some @LittleCaesars pizza!



♡ 1

 **Kangaroo Express** @KrooExpress · 18 Aug 2015 ⌄
Roses are red, violets are blue; it's hot outside, but not at The Roo!
#BadPoetryDay Stay cool with a Polar Pop cup!



 **Kangaroo Express** @KrooExpress · 17 Aug 2015 ⌄
Spoon skills are #onfleek, Michelle! I gotta grab a @Breyers pint and get my
spoon technique on your level!

 

  ♡ 2

 **Kangaroo Express** @KrooExpress · 16 Aug 2015 ⌄
Comin' in for a #ROOCup refill? Why not Salute Our Troops while you're at it?!
#KESalute ow.ly/PToYU





**SALUTE TROOPS**
**5 YEARS OF SERVICE**

↩   ⇄ 2   ♡ 1



**Kangaroo Express** @KrooExpress · 15 Aug 2015
Fact: The best @SUBWAY's are the ones located next to The Roo!
#YouKnowItsTrue ow.ly/PToXS

↩   ⇄   ♡ 1

## New to Twitter?

Sign up now to get your own personalized timeline!

**Sign up**

## You may also like · Refresh


**Rotten Rob...**
@rottenrob...


**Express M...**
@ExpressM...


**Stinker Sto...**
@StinkerSt...


**Hometown ...**
@hometow...

**Pump & Pa...**
@pumpand...

## Worldwide trends

صلّوا علي النبي
18.6K Tweets

**#FelizFinde**
5,217 Tweets

**#FridayThe13th**
18K Tweets

**#HimaDas**
47.7K Tweets

**Hayırlı Cumalar**
40.3K Tweets

**#TrumpVisitUK**
15.7K Tweets

**Johnson & Johnson**
79K Tweets

**Endoğan Adili**

**Isaiah Thomas**
30.3K Tweets

**Love Actually**
43.4K Tweets

© 2018 Twitter   About
Help Center   Terms
Privacy policy   Cookies
Ads info





**Murphy USA**
Company

**Convenience Stores in Cary, North Carolina**

Places ▸ **Cary, North Carolina** ▸ **Grocery Store**
Kangaroo Express

English (US) · Español · Português (Brasil) ·
Français (France) · Deutsch

Privacy · Terms · Advertising · Ad Choices ▷ ·
Cookies · More ▾
Facebook © 2018

**Posts**

**Kangaroo Express**
September 24, 2015 · 

We took the best from our family of brands to create the new Circle K!
Check it out...

4.5K Views

👍 Like    💬 Comment    ↪ Share

Ronald Burton, Yamin Akanda, Tony King and 22 others like this.    Most Relevant ▾

6 Shares

View all 44 comments

**Kangaroo Express** is with Mary Stewart and 5 others.
September 23, 2015 · 

Join us as our Circle K brand goes global. We are as excited as ever to

**See more of Kangaroo Express on Facebook**

    or    Create New Account



Like        Comment

Tony King, Qasim Ali, Frederick Jones and 29 others like this.     Most Relevant ▾

13 Shares

View all 18 comments

See All

Posts

See More ▾

**See more of Kangaroo Express on Facebook**

Log In     or     Create New Account

# Exhibit F

DECISION

Circle K Stores Inc. v. Namepros Private WHOIS
Claim Number: FA1806001790280

PARTIES

Complainant is Circle K Stores Inc. ("Complainant"), represented by William Schultz of Merchant & Gould, P.C., Minnesota, USA.  Respondent is Namepros Private WHOIS ("Respondent"), Canada.

REGISTRAR AND DISPUTED DOMAIN NAME

The domain name at issue is <kangarooexpress.com>, registered with GoDaddy.com, LLC.

PANEL

The undersigned certifies that he has acted independently and impartially and to the best of his knowledge has no known conflict in serving as Panelist in this proceeding.

Paul M. DeCicco, as Panelist.

PROCEDURAL HISTORY

Complainant submitted a Complaint to the FORUM electronically on June 5, 2018; the FORUM received payment on June 5, 2018.

On Jun 6, 2018, GoDaddy.com, LLC confirmed by e-mail to the FORUM that the <kangarooexpress.com> domain name is registered with GoDaddy.com, LLC and that Respondent is the current registrant of the names.  GoDaddy.com, LLC has verified that Respondent is bound by the GoDaddy.com, LLC registration agreement and has thereby agreed to resolve domain disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On June 6, 2018, the FORUM served the Complaint and all Annexes, including a Written Notice of the Complaint, setting a deadline of June 26, 2018 by which Respondent could file a Response to the Complaint, via e-mail to all entities and

persons listed on Respondent's registration as technical, administrative, and billing contacts, and to postmaster@kangarooexpress.com.  Also on June 6, 2018, the Written Notice of the Complaint, notifying Respondent of the e-mail addresses served and the deadline for a Response, was transmitted to Respondent via post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts.

Having received no response from Respondent, the FORUM transmitted to the parties a Notification of Respondent Default.

On June 27, 2018, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the FORUM appointed Paul M. DeCicco as Panelist.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the FORUM has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") "to employ reasonably available means calculated to achieve actual notice to Respondent" through submission of Electronic and Written Notices, as defined in Rule 1 and Rule 2. Therefore, the Panel may issue its decision based on the documents submitted and in accordance with the ICANN Policy, ICANN Rules, the FORUM'S Supplemental Rules and any rules and principles of law that the Panel deems applicable, without the benefit of any response from Respondent.

RELIEF SOUGHT
    Complainant requests that the domain name be transferred from Respondent to Complainant.

PARTIES' CONTENTIONS
    A. Complainant
    Complainant contends as follows:

    Complainant is the owner of the KANGAROO and KANGAROO EXPRESS marks in connection with a wide range of convenience store services.

    Complainant has rights in the KANGAROO EXPRESS mark through its trademark registrations with the United States Patent and Trademark Office ("USPTO")

Respondent's <kangarooexpress.com> domain name is confusingly similar to Complainant's KANGAROO EXPRESS mark as the domain name incorporates the mark in its entirety and only adds a ".com" generic top-level domain ("gTLD").

Respondent has no rights or legitimate interests in the <kangarooexpress.com> domain name. Respondent is not permitted or authorized to use Complainant's KANGAROO EXPRESS mark and is not commonly known by the domain name. Additionally, Respondent is not using the domain name in connection with a bona fide offering of goods or services or a legitimate noncommercial or fair use. Rather, Respondent diverts users to the domain name which resolves to a website featuring competing pay-per-click links, some of which download malicious software. Respondent's attempt to sell the domain name further demonstrates Respondent lacks rights or legitimate interests with respect to the disputed domain name.

Respondent registered and is using the domain name in bad faith as Respondent attempts to sell the <kangarooexpress.com> domain name. Additionally, Respondent disrupts Complainant's business and attempts to attract, for commercial gain, users to the disputed domain name which features competing, pay-per-click hyperlinks. Respondent also renewed the domain name when Complainant inadvertently allowed the domain name to expire. Additionally, Respondent had actual knowledge of Complainant's rights in the KANGAROO EXPRESS mark prior to registering the domain name.

B. Respondent
Respondent failed to submit a Response in this proceeding.

FINDINGS

Complainant has rights in the KANGAROO EXPRESS mark through its registration of such mark with the USPTO.

Respondent is not affiliated with Complainant and had not been authorized to use Complainant's trademark in any capacity.

Respondent registered the atissue domain name after Complainant acquired rights in the KANGAROO EXPRESS trademark.

Respondent uses the domain name to offer it for sale, to display links to third parties some that are competitors of Complainant, as well as to expose website visitors to malware.

DISCUSSION

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1) the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and
(2) Respondent has no rights or legitimate interests in respect of the domain name; and
(3) the domain name has been registered and is being used in bad faith.

In view of Respondent's failure to submit a response, the Panel shall decide this administrative proceeding on the basis of Complainant's undisputed representations pursuant to paragraphs 5(f), 14(a) and 15(a) of the Rules and draw such inferences it considers appropriate pursuant to paragraph 14(b) of the Rules.  The Panel is entitled to accept all reasonable allegations and inferences set forth in the Complaint as true unless the evidence is clearly contradictory. See Vertical Solutions Mgmt., Inc. v. webnet-marketing, inc., FA 95095 (FORUM July 31, 2000) (holding that the respondent's failure to respond allows all reasonable inferences of fact in the allegations of the complaint to be deemed true); see also Talk City, Inc. v. Robertson, D2000-0009 (WIPO Feb. 29, 2000) ("In the absence of a response, it is appropriate to accept as true all allegations of the Complaint.").

Identical and/or Confusingly Similar
The at-issue domain name is identical to a trademark in which Complainant has rights.

Complainant's ownership of a USPTO trademark registration for the KANGAROO EXPRESS trademark evidences its rights in such mark for the purposes of Policy ¶4(a)(I). See Microsoft Corp. v. Burkes, FA 652743 (FORUM

Apr. 17, 2006) ("Complainant has established rights in the MICROSOFT mark through registration of the mark with the USPTO).

Additionally, the at-issue domain name contains Complainant's entire KANGAROO EXPRESS trademark less its space, followed by the top-level domain name ".com." The slight differences between the at-issue <kangarooexpress.com> domain name and Complainant's KANGAROO EXPRESS trademark are insufficient to distinguish one from the other for the purposes of the Policy. Therefore, the Panel finds that pursuant to Policy ¶ 4(a)(i) Respondent's <kangarooexpress.com> domain name is identical to Complainant's KANGAROO EXPRESS trademark. See International Soap Box Derby, Inc. v. Domain Admin / Privacy Protection Service INC d/b/a PrivacyProtect.org, FA 1602433 (FORUM Mar. 4, 2015) ("The domain name contains the mark in its entirety, merely eliminating the spaces between the terms of the mark and adding the generic Top Level Domain ("gTLD") ".org."

<u>Rights or Legitimate Interests</u>
Under Policy ¶ 4(a)(ii), Complainant must first make out a prima facie case showing that Respondent lacks rights and legitimate interests in respect of an at-issue domain name and then the burden, in effect, shifts to Respondent to come forward with evidence of its rights or legitimate interests.  See Hanna-Barbera Prods., Inc. v. Entm't Commentaries, FA 741828 (FORUM Aug. 18, 2006). Since Respondent failed to respond, Complainant's prima facie showing acts conclusively.

Respondent lacks both rights and legitimate interests in respect of the at-issue domain name. Respondent is not authorized to use Complainant's trademark in any capacity and, as discussed below, there are no Policy ¶4(c) circumstances from which the Panel might find that Respondent has rights or interests in respect of the atissue domain name.

WHOIS information for the at-issue domain name identifies the domain name's registrant as "Namepros Private WHOIS" and the record before the Panel contains no evidence that otherwise tends to prove that Respondent is commonly known by the <kangarooexpress.com> domain name. The Panel therefore concludes that Respondent is <u>not</u> commonly known by the <kangarooexpress.com> domain name for the purposes of Policy ¶ 4(c) (ii). SeeCoppertown Drive-Thru Sys., LLC v. Snowden, FA 715089 (Nat. Arb. Forum July 17, 2006) (concluding that the respondent was not commonly known

by the <coppertown.com> domain name where there was no evidence in the record, including the WHOIS information, suggesting that the respondent was commonly known by the disputed domain name).

Furthermore, Respondent uses <kangarooexpress.com> to display pay-per-click hyperlinks some of which compete with Complainant. The domain name also directs <kangarooexpress.com> visitors to malware. Using the domain name in this manner is neither a bona fide offering of goods or services under Policy ¶4(c)(i), nor a non-commercial or fair use pursuant to Policy ¶4(c)(iii). See Ashley Furniture Industries, Inc. v. domain admin / private registrations aktien gesellschaft, FA1506001626253 (FORUM July 29, 2015) ("Respondent is using the disputed domain name to resolve to a web page containing advertising links to products that compete with those of Complainant.  The Panel finds that this does not constitute a bona fide offering or a legitimate noncommercial or fair use."); see also Snap Inc. v. Domain Admin / Whois Privacy Corp., FA 1735300 (FORUM July 14, 2017) ("Use of a disputed domain name to offer malicious software does not constitute a bona fide offering or a legitimate use per Policy ¶ 4(c)(i) & (iii).").

Moreover, Respondent attempts to sell the <kangarooexpress.com> domain name for more than out-of-pocket costs. Offering to sell the trademark identical domain name also suggests that Respondent lacks rights and legitimate interests in respect of the domain name under Policy ¶¶ 4(c)(i) & (iii). See Twentieth Century Fox Film Corporation v. Diego Ossa, FA1501001602016 (FORUM Feb. 26, 2015) ("The Resolving parked page advertises the sale of the domain name with the message 'Would you like to buy this domain?'  The Panel accepts this offer as demonstrative of Respondent's willingness to sell the disputed domain name, and finds that such behavior provides additional evidence that Respondent lacks rights or legitimate interests in the disputed domain name.").

Given the forgoing, Complainant satisfies its initial burden and conclusively demonstrates Respondent's lack of rights and lack of interests in respect of the at-issue domain name pursuant to Policy ¶4(a)(ii).

Registration and Use in Bad Faith
The at-issue domain name was registered and is being used in bad faith. As discussed below Policy ¶4(b) bad faith circumstances are present and there is additional non-Policy ¶4(b) evidence from which the Panel may independently conclude that Respondent acted in bad faith pursuant to Policy ¶4(a)(iii).

First, as mentioned above regarding rights and legitimate interests, Respondent offers to sell the at-issue domain name for an amount in excess of its out-of-pocket costs. A website lists the domain name for-sale for $45,000. Respondent failed to respond and there is no evidence before the Panel that challenges the reasonable inference that Respondent sanctioned the listing. Therefore, the offering suggests Respondent's bad faith registration and use of the domain name pursuant to Policy ¶ 4(b)(i). See Vanguard Trademark Holdings USA LLC v. Wang Liqun, FA1506001625332 (FORUM July 17, 2015) ("A respondent's general offer to sell a disputed domain name for an excess of out-of-pocket costs is evidence of bad faith under Policy ¶ 4(b)(i).").

Next and as also mentioned above regarding rights and legitimate interests, Respondent uses the domain name to display competing pay-per-click hyperlinks. Such use is disruptive to Complainant's business, improperly trades on the goodwill resident in Complainant's trademark, and demonstrates Respondent's bad faith under Policy ¶¶ 4(b)(ii) and/or 4(b)(iv). See Health Republic Insurance Company v. Above.com Legal, FA1506001622088 (FORUM July 10, 2015) ("The use of a domain name's resolving website to host links to competitors of a complainant shows intent to disrupt that complainant's business, thereby showing bad faith in use and registration under Policy ¶ 4(b)(iii)."); see also, American Council on Education and GED Testing Service LLC v. Anthony Williams, FA1760954 (FORUM January 8, 2018) ("Respondent's hosting of links to Complainant's competitors demonstrates bad faith registration and use of the <geddiploma.org> domain name pursuant to Policy ¶ 4(b)(iv)"). Likewise, Respondent's attempt to distribute malware smacks of bad faith. See Amazon Technologies, Inc. v. Timothy Mays aka Linda Haley aka Edith Barberdi, FA1504001617061 (FORUM June 9, 2015) ("In addition, Respondent's undenied use of the websites resolving from the contested domain names to distribute malware and other malicious downloads further illustrates its bad faith in the registration and use of those domain names.").

Finally, Respondent had actual knowledge of Complainant's rights in the KANGAROO EXPRESS mark when it registered the <kangarooexpress.com> domain name.  Respondent's actual knowledge is evident from the notoriety of Complainant's trademark; from Respondent's registering the domain name after it had expired and because the <kangarooexpress.com> domain name addresses a website that displays Complainant's KANGAROO EXPRESS mark as well as links related to convenience store goods and services. Registering and

using an identical or confusingly similar domain with knowledge of a complainant's rights in such domain name indicates bad faith registration and use pursuant to Policy ¶4(a)(iii). See Minicards Vennootschap Onder FIrma Amsterdam v. Moscow Studios, FA 1031703 (FORUM Sept. 5, 2007) (holding that respondent registered a domain name in bad faith under Policy ¶ 4(a)(iii) after concluding that respondent had actual knowledge of Complainant's mark when registering the disputed domain name).

DECISION

Having established all three elements required under the ICANN Policy, the Panel concludes that relief shall be GRANTED.

Accordingly, it is Ordered that the <kangarooexpress.com> domain name be TRANSFERRED from Respondent to Complainant.


_____

Paul Michael  DeCicco, Esq.
Arbitrator


Paul M. DeCicco, Panelist
Dated:  June 29, 2018

Exhibit G



**FORUM**
ARBITRATION · MEDIATION · INTERNATIONAL

| | |
|---|---|
| Circle K Stores Inc.<br>1130 W. Warner Road<br>Tempe, AZ 85284 )<br>Complainant,<br>v.<br>Namepros Private WHOIS<br>Westminster Hiway<br>Richmond, British Columbia<br>V6X 1A7<br>CA<br>Respondent. | Domain Name In Dispute:<br><br>kangarooexpress.com |

## COMPLAINT IN ACCORDANCE WITH
## THE UNIFORM DOMAIN NAME DISPUTE RESOLUTION POLICY

[1.]    This Complaint is hereby submitted for decision in accordance with the Uniform Domain Name Dispute Resolution Policy (UDRP), adopted by the Internet Corporation for Assigned Names and Numbers (ICANN) on August 26, 1999 and approved by ICANN on October 24, 1999, and the Rules for Uniform Domain Name Dispute Resolution Policy (UDRP Rules), with an effective date of July 31, 2015, and the FORUM's Supplemental Rules (Supp. Rules). UDRP Rule 3(b)(i).

[2.]    **COMPLAINANT INFORMATION**

| | | |
|---|---|---|
| a. | Name: | Circle K Stores Inc. |
| b. | Address: | 1130 W. Warner Road<br>Tempe, AZ 85284 |
| c. | Telephone: | 602-728-6383 |
| d. | Fax: | 602-307-6383 |
| e. | E-Mail: | dnet@merchantgould.com |

[3.] **COMPLAINANT AUTHORIZED REPRESENTATIVE, IF ANY**

| | | |
|---|---|---|
| a. | Name: | William Schultz |
| b. | Address: | Merchant & Gould<br>80 South Eighth Street, Suite 3200<br>Minneapolis, MN  55402 |
| c. | Telephone: | 612-332-5300 |
| d. | Fax: | 612-332-9081 |
| e. | E-Mail: | dnet@merchantgould.com, akrueger@merchantgould.com |

UDRP Rule 3(b)(ii).

Complainant's preferred contact person for correspondence relating to this case:

    [a.]    Contact Name(s):   William Schultz, Abby Krueger,
    [b.]    Contact Emails(s):  dnet@merchantgould.com, akrueger@merchantgould.com,

The Complainant chooses to have this dispute heard before a single-member administrative panel.  Rule 3(b)(iv).

## [4.]  RESPONDENT INFORMATION

| | | |
|---|---|---|
| a. | Name: | Private WHOIS Namepros |
| b. | Address: | Westminster Hiway |
| | | Richmond, BC |
| | | V6X 1A7 |
| | | CA |
| c. | Telephone: | +1.6046828059 |
| d. | Fax: | |
| e. | E-Mail: | namesprivacy@hushmail.com |

## [5.]  RESPONDENT AUTHORIZED REPRESENTATIVE, IF KNOWN

Not available.

Rule 3(b)(v).

## [6.]  DISPUTED DOMAIN NAME(S)

    [a.]    The following domain name(s) is/are the subject of this Complaint: Rule 3(b)(vi).

kangarooexpress.com

    [b.]    Registrar Information: UDRP Rule 3(b)(vii).

| | | |
|---|---|---|
| [i.] | Registrar's Name: | GoDaddy.com, LLC |
| [ii.] | Registrar Address: | 14455 North Hayden Rd., Suite 219 |
| | | Scottsdale, AZ 85260 |
| [iii.] | Telephone Number: | 460-624-2546 |
| [iv.] | E-Mail Address: | abuse@godaddy.com |

    [c.]    Trademark/Service Mark Information: Rule 3(b)(viii).

Circle K Stores Inc. ("CKSI") is the owner of the KANGAROO and KANGAROO EXPRESS trademarks as those marks are used in connection with a wide range of convenience store services. CKSI has used the KANGAROO and KANGAROO EXPRESS marks in

commerce continuously since at least as early as 1981.   Additionally, CKSI is the owner of numerous registrations for the trademarks KANGAROO and KANGAROO EXPRESS in the United States.   In particular, CKSI is the owner of the following marks, which are attached as Exhibits 1A-D:

| Mark | Goods/Services | Reg. No. | Country | Exhibit |
|------|----------------|----------|---------|---------|
| **KANGAROO** | Gasoline service station services | 1354632 | USA | 1A |
| **K KANGAROO EXPRESS (and design)** | Retail convenience store services, including gasoline | 3244999 | USA | 1B |
| **KANGAROO EXPRESS (and design)** | Retail convenience store services, including gasoline | 3244998 | USA | 1C |
| **KANGAROO EXPRESS SALUTE OUR TROOPS** | Retail store services featuring convenience store items, coffee and related items, and gasoline; charitable fundraising services | 4877945 | USA | 1D |

In addition to the foregoing registrations, CKSI owns the common law mark KANGAROO EXPRESS as used in connection with the franchise program of its wholly-owned affiliate, TMC Franchise Corporation ("TMC").   (Ex. 2A; *see also* http://www.franchise-circlek.com/kangaroo-express.)   Indeed, CKSI licenses its KANGAROO Marks to TMC in connection with granting franchises to third parties to operate Kangaroo Express convenience store franchises throughout the United States.   The goodwill associated with the franchisees' use of the marks inures to CKSI's benefit.   The foregoing trademarks are hereinafter jointly referred to as the "KANGAROO Marks" (collectively "Ex. 1").

## [7.]   FACTUAL AND LEGAL GROUNDS

This Complaint is based on the following factual and legal grounds: ICANN Rule 3(b) (ix); NAF Supp. Rule 4(a).

CKSI has served clients in the convenience retailing industry for over 60 years.   (Ex. 2B.) The company's roots trace back to 1951 when Fred Hervey purchased three Kay's Food Stores in El Paso, Texas.   (Id.)   The business grew into neighboring New Mexico and Arizona.   (Id.) By 1975, there were 1,000 Circle K brand stores across the United States.   In 2015, CKSI acquired the KANGAROO Marks from its processor in interest, The Pantry, Inc. (Ex. 2C.)

CKSI, including through its predecessors in interest, has extensively used and advertised the KANGAROO Marks in association with a wide range of products and services dating back to

at least as early as 1981.  (Ex. 1.)  CKSI provides information regarding its Kangaroo Express convenience stores via its website.  (Ex. 2A.)  CKSI also maintains individual websites for each of the local stores.  (See, e.g., Ex. 2D.)  CKSI has invested substantial time, money, and effort in creating, marketing, and maintaining a social media presence. CKSI operates a page on Twitter (Ex. 3; *see also* < https://twitter.com/krooexpress?lang=en>) and Facebook (Ex. 4; *see also* < https://www.facebook.com/KangarooExpress/>).  As a result of the extensive promotion of the KANGAROO EXPRESS brand and trade name, CKSI has developed substantial goodwill and customer loyalty under this trademark.  The KANGAROO EXPRESS trademark is a distinctive, widely recognized trademark and was prior to the Respondent's registration of the Domain Name.  (Exs. 1-4.)

Dating back to at least as early as 2006, CKSI's predecessor in interest, The Pantry, Inc. owned and operated the domain name kangarooexpress.com ("Domain Name").  (Ex. 5A at 1-2.) Screenshots of the website associated with the Domain Name show the continuous use of the KANGAROO Marks.  (Ex. 5B.)  On approximately May 10, 2017, after CKSI inadvertently allowed the Domain Name to expire, Respondent registered the Domain Name.  (Ex. 5A at 3; see also Ex. 11.)  On or about March 14, 2018,[1] Respondent then transferred the Domain Name to the current registrar, Godaddy.  (Ex. 5A at 4.)  For the purposes of this Complaint alone, CKSI uses as a priority date March 14, 2013, because the registration with the current registrar necessarily occurred at least after that date.  *Suneva Medical, Inc. v. Servet Temir / Nokta France*, FA1425709 (Nat Arb. Forum, Apr. 12, 2012) (holding renewal date of registration relevant date for purposes of bad faith analysis).

The Respondent has no statutory or common law trademark rights or any other right or legitimate interest to CKSI's KANGAROO Marks or in the infringing Domain Name.  CKSI has not authorized or licensed Respondent to use the KANGAROO Marks or any derivative mark for any purpose.  CKSI's rights in the KANGAROO mark date back to its original use of the mark dating back to at least as early as 1981.  (Ex. 1-2.)  There is no controversy as to the fact that CKSI has priority over Respondent.

The Respondent has registered and used a domain name that is confusingly similar to the KANGAROO Marks in bad faith.  There is no evidence the Domain Name was registered for a legitimate reason.  Rather, Respondent's intent in registering the Domain Name was to profit off

---

1 March 14, 2108 is the date the WHOIS record was updated to reflect Godaddy as the register for the first time. (Ex. 5B.)

of CKSI's trademark rights. Indeed, Respondent has offered to sell the Domain Name for multiples of the actual cost of the Domain Name. The offer for sale appears in connection with the WHOIS report on Domain Tools and also via the website Afternic.com. Screen shots of both the Domain Tools offering and that on Afternic.com are shown below.



(Ex. 6.)



(Ex. 7.)

Not only has Respondent attempted to sell the Domain Name, Respondent is using the Domain Name to divert CKSI's customers to websites containing malware. Typing the Domain Name kangarooexpress.com into a web browser results in malware prevention software blocking access from the site:

 This site is blocked due to a security threat.

rep.getsafeapp5.com

This site is blocked due to a security threat that was discovered by the Cisco Umbrella security researchers.

> Report an incorrect block

> Diagnostic Info

(Ex. 8.)  Further, upon release of the blocking software, the resulting site Respondent has diverted traffic away from CKSI's website to a third party website that provides for downloading browser extensions.

# You're one click from your destination

Our Chrome extension gives you access to thousands of games you can play for free. Click Add extension to start receiving these great games now.

CONTINUE

(Ex. 9.)  Indeed, Respondent is using forwarding code on the website to forward consumers to third party websites.  (Ex. 10.)  The forwarding code modifies the website to which the visitor is directed each time the Domain Name is used.  (*See, e.g.*, Exs. 9, 13-14.)

The evidence shows Respondent knew of CKSI and its KANGAROO EXPRESS trademarks at the time it registered the Domain Name.  Indeed, Respondent uses the trademarks on its website, including a link to advertisements associated with "convenience store jobs."

| | |
|---|---|
| ⯈ **KANGAROO EXPRESS** | ⯈ **HIRING JOB** |
| ⯈ **CONVENIENCE STORE JOBS** | ⯈ **FOOD JOB** |
| ⯈ **HIRING JOB** | ⯈ **CAREER JOB** |
| ⯈ **ONLINE JOB APPLICATION** | ⯈ **EMPLOYMENT JOB** |
| ⯈ **HOW CAN I GET A JOB FROM HOME** | ⯈ **HOME JOB** |

(Ex. 14.)  Respondent's use of the Domain Name to offer the Domain Name for sale and to trick consumers attempting to locate CKSI's Kangaroo Express convenience stores shows Respondent's bad faith.  Transfer of the domain name to CKSI is appropriate.

> a.     **The Domain Name is Confusingly Similar to the KANGAROO Marks (UDRP Policy ¶ 4(a)(i)).**

The Domain Name is confusingly similar to the KANGAROO Marks.  The Domain Name fully incorporates the KANGAROO and KANGAROO EXPRESS trademarks and adds the top level domain ".com."  The addition of the top-level domain is immaterial under the Policy.  *See, e.g., Trip Network Inc. v. Alviera*, FA 914943 (Nat. Arb. Forum Mar. 27, 2007) (concluding that the affixation of top level to a domain name is irrelevant to a Policy ¶ 4(a)(i) analysis).  Therefore, the Domain Name is confusingly similar to the KANGAROO Marks.

> b.     **The Respondent Does Not Have Any Right or Legitimate Interest in the Domain Name (UDRP Policy ¶ 4(a)(ii)).**

Respondent does not have any right or legitimate interest in the Domain Name.  The registration of a domain name for the purpose of redirecting Internet users interested in another's products is not a *bona fide* offering of goods pursuant to Policy ¶ 4(c)(i).  Moreover, Respondent has no legitimate right to the name pursuant to Policy ¶ 4(c)(ii) in that it has not received permission to use the mark and is offering the domain name for sale and it has offered the name for sale.  Furthermore, Respondent is not using the mark for legitimate noncommercial or fair use pursuant to Policy ¶ 4(c)(iii) because Respondent used the site for commercial advertising.  Respondent is responsible for the content on websites using the domain names at issue.  *Netbooks, Inc. v. Lionheat Publ'g*, FA 1069901 (Nat. Arb. Forum Oct. 18, 2007) ("The Panel

7

also notes that Respondent is responsible for the content of any website using the domain name at issue, and cannot pass that responsibility off to its registrar or domain name service provider.").  CKSI incorporates the factual section above herein.

1. **Respondent's Willingness to Sell the Domain Name Shows a Lack of Rights or Legitimate Interests.**

A respondent's attempt to sell a disputed domain name is evidence that the respondent lacks rights and legitimate interests in the disputed domain name under Policy ¶ 4(a)(ii).  *Reese v. Morgan*, FA 917029 (Nat. Arb. Forum Apr. 5, 2007) (finding that the respondent's willingness to sell a contested domain name for more than its out-of-pocket costs provided additional evidence that Respondent had no rights or legitimate interests in the contested domain name); *Williams-Sonoma, Inc. v. Fees*, FA 937704 (Nat. Arb. Forum Apr. 25, 2007) (concluding that a respondent's willingness to sell a domain name to the complainant suggests that a respondent has no rights or legitimate interests in that domain name under Policy ¶ 4(a)(ii)).

Respondent offered to sell the Domain Name for $45,000.  This offer price far exceeds the current standard prices at the Godaddy.com registrar.  (Ex. 12.)  Respondent's willingness to part with the Domain Name shows a lack of rights or legitimate interests in the name.

2. **Respondent Lacks Legitimate Rights Because It does not use the Domain Name in Connection with any *Bona Fide* Offering of Goods or Services.**

A respondent's use of a domain name to trick consumers into visiting its website is not a *bona fide* offering of goods or services pursuant to Policy ¶(c)(i).  *See Bank of Am. Corp. v. Nw. Free Cmty. Access*, FA 180704 (FORUM Sept. 30, 2003) ("Respondent's demonstrated intent to divert Internet users seeking Complainant's website to a website of Respondent and for Respondent's benefit is not a *bona fide* offering of goods or services under Policy ¶4(c)(i)); *Ceridian Corp. v. Versata Software, Inc.*, FA 1259927 (FORUM June 23, 2009) (finding that a respondent's use of a disputed domain name to direct Internet users to a website which attempts to download computer viruses "failed to create any semblance of a *bona fide* offering of goods or services under Policy ¶ 4(c)(i) or a legitimate noncommercial or fair use pursuant to Policy ¶ 4(c)(iii)");*Twitter v. Domain Admin*, Case No. FA1503001607451 (FORUM April 2, 2015) (lack of legitimate rights shown by registrant's scheme to divert web traffic from mark owner to respondent's website to exploit visitors by infecting the visitor's computer with malware or otherwise).

Respondent does not have a *bona fide* interest in the Domain Name pursuant to Policy ¶

4(c)(i) in that its intent in registering the Domain Name was to divert traffic away from CKSI, not to legitimately use the name in connection with the sale of goods. That is shown clearly by Respondent's code placed on the website of the Domain Name, which directs consumers away from CKSI and forwards them to a commercial website that offers downloadable software that was found to be malware and commercial advertising links, including links related to CKSI's Kangaroo Express stores and "convenience store jobs." (Exs. 10, 14.) Further, unsuspecting consumers attempting to visit CKSI's website for convenience store services (e.g., store location information) may inadvertently visit Respondent's site because the Domain Name includes the KANGAROO EXPRESS mark in its entirety and is the prior website location CKSI used to promote its services on the Internet. Consumers are likely confused regarding the content of the site in that it offered links that relate directly to the same offerings CKSI provides on its own website.[2] Respondent, in turn, profits off the links because the links are tied into pay-per-click advertising. (Ex. 14.) The Domain Name is not connected to a *bona fide* offering of goods or services and is not a legitimate use.

### 3. Respondent has no Legitimate Right in the Domain Name Because CKSI has not Granted Respondent Permission to use the Name.

Respondent also has no legitimate rights pursuant to Policy ¶ 4(c)(ii) in that it is not commonly known by the mark and has not received CKSI's permission to use the mark. *Compagnie de Saint Gobain v. Com-Union Corp.*, D2000-0020 (WIPO Mar. 14, 2000) (finding no rights or legitimate interest where respondent was not commonly known by the mark and never applied for a license or permission from complainant to use the trademarked name). A domain name registrant is presumed not to have a legitimate interest in a domain name where (1) Respondent is not a licensee of Complainant; (2) Complainant's prior rights in the domain name precede Respondent's registration; and (3) Respondent is not commonly known by the domain name. Policy ¶ 4(c)(ii); *Gallup, Inc. v. Amish Country Store*, FA96209 (Nat. Arb. Forum Jan. 23, 2001) (holding that Respondent does not have rights in a domain name when Respondent is

---

2       Respondent is responsible for the content on its website. *Ideal Prods., LLC v. Manila Indus., Inc., supra* (Respondent cannot duck its responsibility for the site by saying that others choose the content.) Moreover, to the extent Respondent contends the content is that of a third party (e.g., a third party parking company), Respondent has not made any use of the domain names, which also constitutes a lack of legitimate interest pursuant to Policy ¶ 4(c) (i). *See State Fair of Texas v. State Fair Guides*, FA 95066 (Nat. Arb. Forum July 25, 2000) (finding that the respondent's failure to develop the site demonstrates a lack of legitimate interest in the domain name); *Morgan Stanley v. Guerilla Freedom Fighter c/o Bethesda Properties LLC*, FA 1061232 (Nat. Arb. Forum, Oct 2, 2007) (holding resolution of domain name to website with no content was not a *bona fide* offering of goods or services); *Nike, Inc. v. Crystal Int'l*, D2001-0102 (WIPO Mar. 19, 2001) (finding no rights or legitimate interests where the respondent made no use of the infringing domain names).

not known by the mark).  Furthermore, it is "incumbent upon respondents to advance concrete evidence pursuant to Policy ¶ 4(a)(ii) rebutting the latter assertion because this information is uniquely within the knowledge and control of the respondent."  *Wilson v. Whois Privacy Protection Service*, Inc., FA0502000417186 (Nat. Arb Forum March 29, 2005).

Respondent does not have a legitimate interest in the Domain Name.  CKSI has not licensed its KANGAROO Marks to Respondent.  CKSI's prior rights to the KANGAROO Marks precede Respondent's Domain Name registration.  The Domain Name does not refer to Respondent.

### 4.  Respondent's Diversion of Traffic to a Website Offering Commercial Advertisements is not a Legitimate Use.

Respondent has not and is not using the Domain Name for a legitimate noncommercial or fair use pursuant to Policy ¶ 4(c)(iii) because the name used to resolve to a website displaying commercial links and is offered for sale.  The use of a domain name that resolves to a website containing commercial links is not a noncommercial or fair use.  *Veniece Newton v. Trevon Angulo* (Nat Arb. Forum, Aug. 3, 2007) (holding that respondent's use of Google AdSense for Domains to generate revenue by the use of advertising was not a legitimate noncommercial or fair use); *See RAB Lighting, Inc. v. DNS Support - Ultimate Search*, FA0411000363908 (Nat. Arb. Forum Dec. 30, 2004) (holding that opportunistic use of Complainant's mark to redirect Internet users to a directory website unrelated to Complainant's business was not legitimate); *DSW Shoe Warehouse, Inc. v. Ultimate Search*, FA0501000412381 (Nat. Arb. Forum March 21, 2005) (holding that use of a domain name to redirect Internet users to a search engine website that provided various links to third parties was not legitimate).

Respondent is not making a legitimate, non-commercial, or fair use of the Domain Name in that its purpose in registering and using the Domain Name was to divert CKSI's web traffic to a search directory that contains advertisements that forward to websites related to information related to Kangaroo Express and also its competitors.  (Ex. 14.)  Respondent's use of "CKSI" in the Domain Name misappropriated CKSI's goodwill and cheats consumers into clicking on Respondent's website when they think they will see information regarding CKSI and its KANGAROO EXPRESS brand products.  Respondent profits from the confusion.  That is not a legitimate use of the Domain Name.  Transfer is appropriate.

### c.    The Domain Name Has Been Registered and Used In Bad Faith (UDRP Policy ¶ 4(a)(iii)).

Respondent's registration of a domain name in association with the KANGAROO Marks shows the registration was in bad faith. Respondent's willingness to sell the Domain Name shows bad faith pursuant to Policy ¶ 4(b)(i). Respondent's registration of a Domain Name with the actual knowledge of CKSI's trademark rights in that name shows bad faith pursuant to Policy ¶ 4(b)(ii). Because Respondent's website associated with the Domain Name contained advertisements for CKSI's competitors, Respondent has also acted in bad faith pursuant to Policy ¶ 4(b)(iii). Respondent's intentional attempt to attract Internet users to its website by using a name that is confusingly similar to the KANGAROO Marks is also in violation of Policy ¶ 4(b) (iv).

### 1. Respondent's Willingness to Sell the Domain Name Shows Bad Faith.

A respondent's willingness to sell the disputed domain name without using it for any other legitimate purpose indicates that the respondent purchased the disputed domain name with the intent to sell it, which shows bad faith registration and use according to Policy ¶ 4(b) (i). *See Bank of Am. Corp. v. Nw. Free Cmty. Access*, FA 180704 (Nat. Arb. Forum Sept. 30, 2003) ("Respondent's general offer of the disputed domain name registration for sale establishes that the domain name was registered in bad faith under Policy ¶ 4(b)(i)."); *see also Am. Online, Inc. v. Avrasya Yayincilik Danismanlik Ltd.*, FA 93679 (Nat. Arb. Forum Mar. 16, 2000) (finding bad faith where the respondent offered domain names for sale).

Respondent's willingness to sell the Domain Name, as described above, shows Respondent's bad faith. The evidence shows Respondent knew of CKSI and its KANGAROO Marks at the time it registered the Domain Name. No other entity uses the mark KANGAROO EXPRESS in connection with convenience store services. Respondent, however, associated its advertising in connection with "Kangaroo Express and "convenience store jobs." (Ex. 14.) Respondent knew of CKSI and its KANGAROO EXPRESS brand. Respondent then used the name to forward to a commercial links website, all the while intending to sell the Domain Name, to CKSI or one of its competitors. Respondent's actions show its bad faith.

### 2. Respondent Registered the Domain Name in Bad Faith Knowing of CKSI's Trademark Rights in the KANGAROO Marks.

Respondent's registration of the Domain Name was in bad faith pursuant to Policy ¶ 4(b) (ii) because at the time the name was registered, Respondent knew of CKSI's rights. "[T]here is a legal presumption of bad faith when [a] Respondent reasonably should have been aware of

11

Complainant's trademarks, actually or constructively." *Pavillion Agency, Inc. v. Greenhouse Agency, Ltd.*, D2000-1221 (WIPO Dec. 4, 2000) (finding that the domain names are so obviously connected with Complainant that the use or registration by anyone other than Complainant suggests opportunistic bad faith); *see also Samsonite Corp. v. Colony Holding*, FA 94313 (Nat. Arb. Forum Apr. 17, 2000) (finding that evidence of bad faith includes actual or constructive knowledge of a commonly known mark at the time of registration). "Where the domain name has been previously used by the Complainant, subsequent registration of the domain name by anyone else indicates bad faith, absent evidence to the contrary." *InTest Corp. v. Servicepoint*, FA 95291 (Nat. Arb. Forum Aug. 30, 2000).

Respondent had actual knowledge of CKSI's trademark rights in its KANGAROO Marks prior to the registration of the Domain Name. The evidence shows the Domain Name was registered after it had been used by CKSI. The fact Respondent acquired the name after CKSI's use shows bad faith. Further, Respondent used the Domain Name to provide links related to convenience store services. The only company that offers convenience store services in connection with the name Kangaroo Express is the Complainant in this proceeding. There would be no reason to register a domain name including the unrelated terms "kangaroo" and "express" unless the Respondent knew of CKSI and its KANGAROO EXPRESS brand convenience store services. The evidence shows the Respondent had actual notice of CKSI's trademark rights in and to the KANGAROO Marks at the time the Domain Name was registered. On that basis alone, Respondent's registration of a confusingly similar domain name shows bad faith.

### 3. Respondent Acted in Bad Faith when It Diverted Customers to CKSI's Competitors.

Respondent's diversion of traffic to a complainant's competitors also shows bad faith pursuant to Policy ¶ 4(b)(iii). *David Hall Rare Coins v. Tex. Int'l Prop. Assocs.*, FA 915206 (Nat. Arb. Forum Apr. 9, 2007) (finding that a respondent registered and used a disputed domain name in bad faith pursuant to Policy ¶ 4(b)(iii) where that respondent used the domain name to advertise goods and services of a complainant's competitors, thereby disrupting that complainant's business); *see also Puckett, Individually v. Miller*, D2000-0297 (WIPO June 12, 2000) (finding that a respondent diverted business from a complainant to a competitor's website so as to come within the terms of Policy ¶ 4(b)(iii)); *Puckett, Individually v. Miller*, D2000-0297 (WIPO June 12, 2000) (finding that the respondent has diverted business from the complainant to a competitor's website in violation of Policy ¶ 4(b)(iii)).

Respondent listed advertisements for CKSI's competitors on the website associated with the Domain Name. By offering a website in connection with the Domain Name, Respondent was directly competing for website traffic with CKSI and its website. Respondent used that website to divert traffic that should have reached CKSI's website directly. That is bad faith.

    **4. Respondent Acted in Bad Faith by Intentionally Attempting to Attract Internet Users to Its Website for Commercial Gain by Creating a Likelihood of Confusion with the KANGAROO Marks.**

Bad faith intent pursuant to Policy ¶4(b)(iv) can be inferred from Respondent's choosing to use a designation that it knows to be similar to another's registered trademark in order to attract consumers to its website. *See G.D. Searle & Co. v. Celebrex Drugstore*, FA 123933 (Nat. Arb. Forum Nov. 21, 2002) (finding that Respondent registered and used the domain name in bad faith pursuant to Policy ¶ 4(b)(iv) because Respondent was using the confusingly similar domain name to attract Internet users to its commercial website); *AltaVista Co. v. Krotov*, D2000-1091 (WIPO Oct. 25, 2000) (finding bad faith under Policy ¶ 4(b)(iv) where the respondent's domain name resolved to a website that offered links to third-party websites that offered services similar to the complainant's services and merely took advantage of Internet user mistakes).

Bad faith is shown because Respondent registered the Domain Name in order to trade on CKSI's goodwill associated with its KANGAROO Marks by creating a likelihood of confusion as to the source of the website. The banner of Respondent's website prominently displays the KANGAROO EXPRESS trademark in connection with the Domain Name. (Ex. 14.) Consumers who encounter the site are likely to click on the links because they are related to CKSI's offerings. Respondent's use of commercial links in a directory form shows bad faith. *See The Neiman Marcus Group, Inc. and NM Nevada Trust v. Horoshiy, Inc.*, FA338381 (Nat. Arb. Forum., Oct. 5, 2004) (finding bad faith based on use of commercial links on website); *see also Deluxe Corp. v. Dallas Internet*, FA 105216 (Nat. Arb. Forum Apr. 10, 2002) (finding bad faith registration based on redirection of users to domain name and receiving commission through affiliate program). Respondent's actions demonstrate Respondent's bad faith.


**[8.]   REMEDY SOUGHT**

The Complainant requests that the Panel issue a decision that the Domain Name registration be transferred to Complainant and that the Registrar comply with that decision. UDRP Rule 3(b)(x); UDRP Policy ¶ 4(i).

## [9.]   OTHER LEGAL PROCEEDINGS

No other legal proceedings that have been commenced or terminated in connection with or relating to the Domain Name.  ICANN Rule 3(b)(xi).

## [10.]   MUTUAL JURISDICTION

The Complainant will submit, with respect to any challenges to a decision in the administrative proceeding canceling or transferring the domain name, to jurisdiction at the location of the principal office of the concerned registrar.   ICANN Rule 3(b)(xiii).

## [12.]   CERTIFICATION

Complainant agrees that its claims and remedies concerning the registration of the domain name, the dispute, or the dispute's resolution shall be solely against the domain-name holder and waives all such claims and remedies against (a) the FORUM and panelists, except in the case of deliberate wrongdoing, (b) the registrar, (c) the registry administrator, and (d) the Internet Corporation for Assigned Names and Numbers, as well as their directors, officers, employees, and agents.

Complainant certifies that the information contained in this Complaint is to the best of Complaint's knowledge complete and accurate, that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in this Complaint are warranted under these Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully Submitted,

Dated: June 5, 2018                         By: s/William Schultz _____ __
                                                   William Schultz, Esq.
                                                   MERCHANT & GOULD P.C.
                                                   3200 IDS Center
                                                   80 South Eighth Street
                                                   Minneapolis, MN 55402-2215
                                                   Phone:  (612) 332-5300